FILED

FEB 0 2 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREW LEE BOYER,                )
                                 )    Civil No. 06-35-PK
            Petitioner,          )
                                 )
      v.                         )
                                 )
BRIAN BELLEQUE,                  )
                                 )    FINDINGS AND RECOMMENDATION
            Respondent.          )

Tonia L. Moro
Assistant Federal Public Defender
15 Newtown Street
Medford, Oregon  97501

      Attorney for Petitioner

John R. Kroger
Attorney General
Jacqueline Kamins
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

      Attorneys for Respondent

///

1 - FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge.

Petitioner Andrew Lee Boyer brings this habeas corpus action pursuant to 28 U.S.C. § 2254 and challenges his convictions and sentence for Attempted Aggravated Murder, Sodomy, Attempted Sodomy and Sexual Abuse. For the reasons set forth below, the Second Amended Petition for Writ of Habeas Corpus (#53) should be denied, and Judgment should be entered dismissing this action with prejudice.

## BACKGROUND

On May 15, 1997 (Case No. 97-277), August 14, 1997 (Case No. 97-441), and October 2, 1997 (Case No. 97-547),[1] the Yamhill County Grand Jury returned indictments charging Boyer with three counts of Attempted Aggravated Murder, one count of Attempted Murder, six counts of Sodomy in the First Degree, four counts of Sodomy in the Second Degree, one count of Sodomy in the Third Degree, one count of Attempted Sodomy in the Second Degree, nine counts of Sexual Abuse in the First Degree, one count of Sexual Abuse in the Second Degree, and one count of Sexual Abuse in the Third Degree. Respondent's Exhibits 102-104. A jury convicted Boyer on two counts of Attempted Aggravated Murder, five counts of Sodomy in the First Degree, two counts of Sodomy in the Second Degree, one count of Attempted Sodomy in the Second Degree, two counts of Sexual Abuse in the First Degree, and one count of Sexual Abuse in the

---

[1] All three cases were consolidated for trial.

2 - FINDINGS AND RECOMMENDATION

Second Degree.   The court imposed a sentence totaling 483 months. Respondent's Exhibit 101.

Boyer directly appealed his sentence, but the Oregon Court of Appeals affirmed the trial court without a written opinion, and the Oregon Supreme Court denied review.   State v. Boyer, 168 Or. App. 382, 9 P.3d 157 (2000), rev. denied 331 Or. 244, 18 P.3d 1099 (2000); Respondent's Exhibits 105-109.

Boyer then filed an amended petition for post-conviction relief ("PCR") in state court.   The PCR trial court denied relief. Boyer v. Czerniak, Marion County Circuit Court Case No. 01C-20744. On appeal, the Oregon Court of Appeals affirmed without written opinion, and the Oregon Supreme Court denied review.   Boyer v. Palmateer, 200 Or. App. 414, 115 P.3d 988 (2005), rev. denied 339 Or. 450, 124 P.3d 609 (2005); Respondent's Exhibits 126-131.

After obtaining a stay in this federal habeas action, Boyer filed a successive petition for post-conviction relief in state court.   The PCR trial court granted the state's motion for summary judgment. Boyer v. Belleque, Marion County Circuit Court Case No. 04C-19897. On appeal, the Oregon Court of Appeals affirmed without written opinion, and the Oregon Supreme Court denied review.   Boyer v. Belleque, 209 Or. App. 816, 149 P.3d 347 (2006), rev. denied 343 Or. 363, 169 P.3d 1268 (2007); Respondent's Exhibits 139-143.

On January 6, 2006, Boyer filed this action.  His grounds for relief as set forth in his Second Amended Petition are as follows:

1.  Ground One:  Petitioner's Fourteenth Amendment Rights were violated because he was deprived of a fair trial and due process when he was convicted upon proof insufficient to find that he committed the attempted aggravated murder offenses beyond a reasonable doubt.

    Supporting Facts:  The trial court denied petitioner's motion for acquittal for the two counts of Attempted Aggravated Murder.  There was insufficient evidence for the jury to convict beyond a reasonable doubt because the evidence was insufficient to establish that petitioner intended to murder and, contrary to the state's erroneous theory, petitioner may not be convicted of attempting a reckless act.

2.  Ground Two:  Petitioner's Sixth and Fourteenth Amendment Rights were violated because trial counsel failed to make appropriate objections to ensure that the jury's verdict on the attempted aggravated murder convictions were based upon a finding that petitioner intended murder and not that petitioner acted recklessly.

    Supporting Facts: Petitioner's convictions for attempted murder required a finding that petitioner knowingly exposed the victims to a risk of contracting a deadly disease with the intent that they contract it and die. The verdict does not disclose that the jury made such a finding because counsel failed to make appropriate objections, including to objecting [to] the prosecutor's misconduct, which included misquoting the evidence and providing erroneous instructions about the law.

3.  Grounds Three, Four and Five:  Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated because his conviction resulted from the unlawful admission of petitioner's pre-trial statements which were involuntary, which had been ruled excluded or which should have been excluded because of police misconduct.

    Supporting Facts:  The trial court erred in admitting an audiotape which included defendant's pre-*Miranda* statements which were suppressed by the trial court.  The prosecutor's submission of petitioner's pre-trial statements violated petitioner's rights against self-

4 - FINDINGS AND RECOMMENDATION

incrimination and admission of the statements violated his due process right to a fair trial. Petitioner's pre-trial pre-*Miranda* and post-*Miranda* statements were involuntary, a product of custodial interrogation and inadmissible. The trial court erred when it failed to suppress petitioner's post-*Miranda* statements. Trial counsel was ineffective when he failed to object to the admission of petitioner's pre-trial statements at trial.

Ground Six: Petitioner was denied Sixth and Fourteenth Amendment rights to be sentenced based only on the facts supported by the jury's verdict.

Supporting Facts: Petitioner was sentenced based upon facts not found by the jury, specifically that the conduct occurred on separate days or otherwise was not part of the same criminal episode or course of conduct. The sentencing court made its own findings about whether the conduct was part of the same criminal episode or course of conduct.

Ground Seven: Petitioner was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel because counsel failed to effectively object to his sentence.

Supporting Facts: Petitioner's counsel failed to effectively object to the court's sentence when counsel failed to state the authority for his objection that the Court mis-applied the sentencing guideline based upon the limitation of the jury's verdict and when counsel failed to object to the court's finding that the offense conduct was not part of the same criminal episode or course of conduct.

Ground Eight: Petitioner was denied his right to a jury trial and due process of law in violation of the Sixth Amendment and Oregon Constitution Article I, section 11, when the sentencing judge imposed a sentence in excess of the applicable statutory maximum based upon facts not found by the jury and proved beyond a reasonable doubt.

Supporting Facts: The trial court imposed consecutive sentences without jury findings of fact necessary to authorize the imposition of consecutive sentences under Oregon law and without a finding that the state proved such facts beyond a reasonable doubt.

Ground Nine:  Petitioner was denied his right to a jury
trial and due process of law in violation of the Sixth
Amendment and Oregon Constitution Article I, section 11,
when the sentencing judge considered out-of-court
statements of witnesses.

Supporting Facts:  The pre-sentence report considered by
the sentencing court contained out-of-court statements
made by witnesses.  The court failed to find that the
witnesses were unavailable.  The court failed to proved
petitioner with an opportunity to cross-examine the
witnesses.

Ground Ten:   Petitioner was denied his Sixth and
Fourteenth Amendment rights to effective assistance of
counsel when counsel failed to object to the sentences on
the basis that they violated his jury trial rights and
right to confrontation under the state and federal
constitutions.

Supporting Facts:  While trial counsel did object to the
consecutive sentences he failed to raise petitioner's
right to be sentenced only upon the facts found by the
jury and proved beyond a reasonable doubt and information
and testimony subject to confrontation.

Respondent asks the court to deny relief on the Second Amended
Petition because Boyer has failed to present arguments for most of
his claims and the remaining claims were correctly denied on the
merits in state-court decisions entitled to deference.

## DISCUSSION

## I.   Unargued Claims

Boyer fails to brief Ground Two, parts of Grounds Three
through Five, and Grounds Six through Ten in his counseled
supporting memorandum.  Noting that he argues for relief in his
memorandum on only two issues, Boyer "requests that the Court rule
on the merits of all of his grounds." Memorandum in Support (#54),

p. 19.  The court has reviewed the record as to Boyer's unbriefed claims and determined that they would not entitle him to relief. See 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."); see also Renderos v. Ryan, 469 F.3d 788, 800 (9th Cir. 2006)(counsel for petitioner waived claims in petition for writ of federal habeas corpus, where counsel did not attempt to set forth the legal standards for such claims or attempt to meet them).

Accordingly, the remaining claims at issue in this case are as follows:   (1) whether there was sufficient evidence to convict Boyer of attempted aggravated murder; and (2) whether the introduction at trial of Boyer's statements to police, made after mid-interrogation Miranda warnings were given, violated his rights under the Fifth and Fourteenth Amendments.

## II.  **Merits**

### A.  **Standard of Review**

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was:   (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and Boyer bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id. at 410. The state court's application of clearly established law must be objectively unreasonable. Id. at 409.

B. **Analysis**

1. **Whether there was Sufficient Evidence for a Jury to Convict Boyer of Attempted Aggravated Murder**

Boyer argues that a jury could not infer intent to kill, a necessary element of Attempted Aggravated Murder, where the prosecutor presented no evidence at trial: (1) that he ejaculated

into either of his victims; or (2) that he knew penetration without ejaculation would or could cause a risk of infection of HIV/AIDS. In addition, Boyer contends that during his closing argument the prosecutor misinstructed the jury on the law, misrepresented witness testimony when he told the jury they could infer intent from reckless conduct, told the jury proof of injury was insignificant, and repeatedly invited the jury to speculate about whether Boyer had actually withdrawn before ejaculation.[2]

In response, the state argues that under Oregon law a defendant can be convicted of attempted murder for engaging in activities that might infect sex partners with HIV where a reasonable jury could conclude the defendant tried to harm the victims and was not merely seeking sexual gratification. Response (#55), p. 8, citing State v. Hinkhouse, 139 Or. App. 446, 453 (1996). According to the state, the evidence presented at Boyer's trial was sufficient to meet the Hinkhouse standard. Moreover, the state contends that to the extent Boyer challenges the state court decision on the basis that the facts underlying his case are distinguishable from Hinkhouse, the Oregon courts have addressed this issue of state law and this federal court is not in a position to second guess these determinations.

---

[2]   For the reasons set forth above, claims related to the prosecutor's alleged misconduct during his closing arguments are not before the court.

9 - FINDINGS AND RECOMMENDATION

As a preliminary matter, the parties agree <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979) governs this sufficiency of the evidence issue. In reviewing a conviction under this standard, a court must determine whether the evidence, examined in the light most favorable to the prosecution, would allow any rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt. <u>Id</u>. at 318.

As noted above, Boyer insists that without evidence that he ejaculated into his victims or that he knew he could transmit HIV/AIDS through penetration alone, a jury could not infer that he intended to cause their deaths. In further support of his claim, Boyer argues the facts in his case differ from those presented in <u>Hinkhouse</u> in the following critical ways: (1) there was no evidence demonstrating that Boyer had knowledge that he was **not** protecting his victims by withdrawing before ejaculation; (2) the prosecutor in Boyer's case specifically argued that Boyer acted impulsively and intended only to obtain sexual gratification; (3) Boyer did not refuse or pretend to wear condoms; and (4) Boyer never admitted he intended to spread the disease to others.

Focusing on the evidence that was before the trial court when it denied Boyer's motion for judgment of acquittal on the attempted aggravated murder charges, and viewing it in the light most favorable to the prosecution, the court notes the following:

1.   Boyer knew he had full blown AIDS and believed it was a deadly disease;

10 – FINDINGS AND RECOMMENDATION

2. He knew the deadly infection could be transmitted through unprotected anal intercourse and knew the importance of using condoms;

3. He knew his viral counts were elevated due to the fact he was not taking his medication as directed by his doctor;

4. He targeted extremely vulnerable victims (Betts, a 12-year-old boy with a history of sexual abuse, and McCann, an 18-year-old developmentally disabled individual);

5. He never revealed his HIV/AIDS status to his victims;

6. He threatened to kill McCann and McCann's parents if he told what Boyer did to him;

7. McCann described Boyer's rape of him as painful; and

8. In describing his anal intercourse with McCann to yet another 13-year-old victim, Boyer stated "I butt fucked him pretty good.  It was pretty good."

In denying Boyer's motion, the trial court stated:

Okay.  What I am going to say is this with respect to these motions.  Intent is a very difficult thing to prove at best.  As the parties are aware it is very rare anybody states expressly what their intentions were.  And typically it has to be inferred from the evidence.

I think in this case given the knowledge that is attributable to Mr. Boyer regarding the infectious disease, the jury could infer an intent here to cause the deaths.

Trial Transcript, Part B, pp. 430-31.

Even assuming there was no evidence Boyer ejaculated into his victims, my review of the record, in accord with the trial court's finding above, supports a conclusion that there was evidence presented at trial from which a rational jury could conclude Boyer knew his infection could be transferred through penetration alone. Boyer argues that he believed of unprotected sex and anal sodomy

11 - FINDINGS AND RECOMMENDATION

required ejaculation.  Petitioner's Reply to Response (#57), p. 5.
However, Dr. Gilbert, Boyer's treating physician, testified that he
would expect Boyer to know the danger of unprotected anal sodomy to
another person.  Trial Transcript, Part B, p. 399.  Viewing this
evidence in the light most favorable to the prosecution, I conclude
a rational jury could infer the doctor's testimony referred to any
unprotected penetration with or without ejaculation.

Boyer also contends he is entitled to relief on this claim
because the prosecutor argued at trial that Boyer acted solely for
his own sexual gratification.  Boyer asserts that pursuant to
Hinkhouse intent to satisfy one's sexual desires alone is not
sufficient to satisfy the specific intent element of the crime at
bar.

The court has reviewed Hinkhouse and agrees with Boyer that
the defendant in that case was more actively deceptive and that
there was more direct evidence of his intent to spread AIDS to his
victims, as opposed to "merely satisfy[ing] his sexual desires."
139 Or. App. at 453.  The court's review of the record here,
however, reveals that Boyer's victims were more vulnerable than
Hinkhouse's.  Given their age and disability, they lacked the
sophistication to either make inquiries about Boyer's health status
or to demand that he wear condoms.  For these reasons, active
deception on Boyer's part regarding his health status was
unnecessary.

12 - FINDINGS AND RECOMMENDATION

Moreover, regardless of the prosecution's statements that Boyer acted only to satisfy his sexual desires, the trial court, in a reasoned decision entitled to deference, determined that there was sufficient evidence from which a rational jury could infer under state law that Boyer intended to cause the deaths of his victims.    Boyer took issue with that ruling on appeal and specifically argued to the Oregon Court of Appeals that the facts in his case were distinguishable from those presented in Hinkhouse. The Oregon Court of Appeals denied relief on this claim.    As respondent properly notes, the state courts are the final arbiters of state law.    A state court determination of state law is not subject to review in a federal habeas court.    Bains v. Cambra, 204 F.3d 964, 971 (9th Cir. 2000)("federal court is bound by the state court's interpretation of state laws").

Based on the foregoing, my careful review of the record leads only to the conclusion that the trial court's determination that sufficient evidence was presented at trial for a rational jury to find that Boyer had intent to infect his victims with a deadly virus and to cause their deaths, was not contrary to, nor an unreasonable application of Jackson v. Virginia.

2.    **Whether the Introduction at Trial of Statements Boyer Made to Police After Mid-Interrogation Miranda Warnings were Given, Violated His Rights Under the Fifth and Fourteenth Amendments**

Boyer contends that the trial court erred when it denied his motion to suppress statements he made to police after the detective

13 - FINDINGS AND RECOMMENDATION

in his case, Detective Baltzell, advised him mid-interrogation of his <u>Miranda</u> rights. According to Boyer, the detective deliberately employed a two-step procedure to interrogate him, first without the <u>Miranda</u> warnings, and later, with <u>Miranda</u> warnings. In addition, Boyer argues all of his statements were involuntarily made.

<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) requires that unwarned admissions be suppressed. However, statements made after mid-interrogation warnings are given should only be suppressed if the statements were not knowingly or voluntarily made. <u>Oregon v. Elstad</u>, 470 U.S. 298, 309 (1985).

In this case, Boyer made certain inculpatory statements at the time of his arrest and during a taped interview at the police station prior to Detective Baltzell advising him of his <u>Miranda</u> rights. At some point during the taped interview, the detective told Boyer he had forgotten to advise him of his rights and did so at that time. Boyer acknowledged that he understood his rights, but nevertheless continued on with the interview and made additional post-<u>Miranda</u> inculpatory statements.

During a pretrial hearing, Boyer argued that all of the statements he made to police should be suppressed because they were coercively obtained and his post-<u>Miranda</u> statements were not knowingly and voluntarily given. Finding that none of the statements, pre or post-<u>Miranda</u>, were obtained coercively, the trial court denied Boyer's motion to suppress the post-<u>Miranda</u> statements.

14 - FINDINGS AND RECOMMENDATION

The court noted that:

> There's no evidence that Mr. Boyer was a mentally
> handicapped individual or a naive, or intellectually
> disabled individual who would in some way was subject to
> having his will overborn.
>
> There might have been some sophistication in the
> questioning technique, but it doesn't rise to the level
> of coercion in my view.
>
> There were no promises made to the Defendant.    The
> Defendant indicated no reluctance to talk.  There was no
> duress, no coercion.    In fact, the Defendant was
> cooperative and unafraid and did not appear intimidated
> from hearing him on the tape.
>
> The detective was soft spoken, polite, and at some point
> realized that, which is clear on the tape, that he had
> forgotten to Mirandize the Defendant.  And he did in fact
> Mirandize Mr. Boyer at that point in the interview.
>
> * * *
>
> I think the Defendant's statement was clearly voluntary
> both from -- well, it was voluntary throughout from the
> time he was arrested all the way through the completion
> of the statement.

Transcript, Part A, pp. 32-34.

Boyer's assertions notwithstanding, I can find no evidence
that the detective deliberately employed a strategy to question
Boyer in two stages:  one pre-<u>Miranda</u> and the second post-<u>Miranda</u>.
Moreover, as noted above, the trial court specifically found that
the detective forgot to <u>Mirandize</u> Boyer.   In support of his
contention that the detective deliberately employed a two-step
procedure to interrogate Boyer, he points to Detective Baltzell's
testimony wherein he describes certain interrogation techniques he
uses to elicit admissions during interviews with suspects.   With

15 - FINDINGS AND RECOMMENDATION

Boyer the detective testified to using a technique to try and focus Boyer's attention away from the possible punishment and onto what happened and relieving himself of guilt; a technique to get him to admit to sexual contact by talking about whether the contact was consensual or not consensual; a technique to make him reconsider disclosing the truth by implying things would be better down the road; and a technique wherein the detective stated he needed to know the names of the victims. The detective's use of these interrogation techniques does not bear on the question of whether he deliberately employed a strategy to question Boyer in two stages. Accordingly, the court concludes that Boyer has not met his burden of rebutting the correctness of the trial court's finding that the detective forgot to Mirandize Boyer by clear and convincing evidence. Boyer's reliance on Missouri v. Seibert, 542 U.S. 600 (2004), a case involving the deliberate and intentional withholding of Miranda warnings, is therefore misplaced.

The relevant inquiry here is whether Boyer's post-Miranda statements were knowing and voluntary. The trial court carefully analyzed this issue and determined all of Boyer's statements, pre and post-Miranda, were voluntarily made. Boyer's arguments related to Detective Baltzell's interrogation techniques are insufficient to demonstrate that the trial court's denial of his motion to suppress his post-Miranda statements was contrary to, or involved an unreasonable application of Oregon v. Elstad, 470 U.S. 298 (1985).

16 - FINDINGS AND RECOMMENDATION

## RECOMMENDATION

Based on the foregoing, the Second Amended Petition for Writ of Habeas Corpus (#53) should be DENIED, and judgment should enter DISMISSING this case with prejudice.  In addition, the district judge should certify that Boyer has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).  This case is not appropriate for appellate review.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from the service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district

17 - FINDINGS AND RECOMMENDATION

judge.   These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals.   Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 1st day of February, 2010.

Paul Papak
United States Magistrate Judge

18 - FINDINGS AND RECOMMENDATION